**Robert C. Double III**, OSB No. 200683
*rdouble@mayerbrown.com*
MAYER BROWN LLP
350 South Grand Ave., 25th Fl.
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

**Hans J. Germann** (Pro Hac Vice To Be Filed)
*hgermann@mayerbrown.com*
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8792
Facsimile: (312) 706-8169

**Raymond P. Bolaños** (Pro Hac Vice To Be Filed)
*rb2659@att.com*
AT&T Services, Inc. Legal Dept.
430 Bush Street, 6th Floor
San Francisco, CA 94108
Telephone: (415) 268-9491
Facsimile: (415) 543-0418

Attorneys for Plaintiff
New Cingular Wireless PCS, LLC d/b/a AT&T Mobility

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, D/B/A AT&T MOBILITY, a Delaware limited liability company, | Case No.: 6:22-cv-1635 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | Effective Prohibition (47 U.S.C. §§ 253(a), 47 U.S.C. § 332(c)(7)(B)(i)(II)) |
| LANE COUNTY, OREGON, | |
| Defendant. | Request For Expedited Review Pursuant To 47 U.S.C. § 332(c)(7)(B)(v) |

Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility ("AT&T"), a limited liability company organized and existing under the laws of Delaware, complains against Defendant Lane County, Oregon (the "County") and alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises under the laws of the United States, including the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. §§ 253 and 332 ("Act"). This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce). The Court's authority to grant declaratory relief and related injunctive relief is based upon 28 U.S.C. §§ 2201-2202 because an actual controversy exists.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because AT&T's claims stated herein arose in this judicial district.

## INTRODUCTION

3.      For more than a year, AT&T has been trying to place a cell tower on a 40' by 40' lease area, on a 5-acre parcel in Lane County (the "Proposed Facility"), to provide and improve wireless services in the County.

4.      Federal law limits the ability of local governments to block installation of such facilities, based on the nationwide goal of promoting the widespread availability of advanced, reliable wireless services. The County violated this federal law by denying approval of the Proposed Facility, and AT&T now seeks declaratory and injunctive relief.

## PARTIES

5.      Plaintiff AT&T is a limited liability company duly organized, existing, and operating under the laws of Delaware, with its principal place of business in Atlanta, Georgia, and offices at locations throughout Oregon. At all times relevant herein, AT&T has been and is qualified to do business in Oregon.

AT&T is a wireless telecommunications carrier that provides personal wireless services within the meaning of the Act.

6.    Defendant Lane County is an Oregon political subdivision under the laws of the State of Oregon.

## LEGAL BACKGROUND

7.    "Congress enacted the Telecommunications Act of 1996 (TCA), 110 Stat. 56, to promote competition and higher quality in American telecommunications services and to 'encourage the rapid deployment of new telecommunications.'" *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005). "One of the means by which [Congress] sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Id*. In order to prioritize and streamline deployment of wireless technologies on a national basis, the Act restricts the authority of state and local governments to regulate "the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(B).

8.    Under the Act, local regulations may not, among other things, "prohibit or have the effect of prohibiting the ability" of a carrier to provide telecommunications services (47 U.S.C. § 253(a)); and local regulation of the placement of wireless facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services" (47 U.S.C. § 332(c)(7)(B)(i)(II)). The Federal Communications Commission ("FCC") has promulgated orders and regulations interpreting and implementing Sections 253 and 332 of the Act, which include identification of the type of local action, or inaction, that may unlawfully prohibit service.

9.    The Federal Communications Commission ("FCC") has held that an effective prohibition under 47 U.S.C. § 332(c)(7) occurs whenever a decision of a

local government "materially inhibits" wireless services. *See In the Matter of California Payphone Assoc. Petition for Preemption, Etc.,* Opinion and Order, 12 FCC Rcd. 14191 (FCC rel. July 17, 1997).

10.     The FCC has confirmed that a "state or local legal requirement has the effect of prohibiting telecommunications service when that legal requirement 'materially limits' or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment*, Declaratory Ruling and Third Report and Order, FCC 18-133, 30 FCC Rcd 9088 (Sept. 27, 2018) ("*Infrastructure Order*"), ¶ 35. "[A]n effective prohibition occurs where a [local regulation] materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service." *Id.* at ¶ 37. The Ninth Circuit has also reaffirmed this material inhibition standard. *See City of Portland v. United States*, 969 F.3d 1020 (9th Cir. 2020).

11.     Under the FCC's material inhibition standard, the analysis of an effective prohibition "focuses on the service the provider wishes to provide, incorporating the capabilities and performance characteristics it wishes to employ, including facilities deployment to provide existing services more robustly, or at a better level of quality." *Infrastructure Order*, at n.95. A local government "could materially inhibit service in numerous ways – not only by rendering a service provider unable to provide existing service in a new geographic area or by restricting the entry of a new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Id.*, ¶ 37.

12.     A wireless carrier may demonstrate an effective prohibition by showing there is a "significant gap" in service and the proposed installation is the "least intrusive means" of closing that gap. *See T-Mobile USA, Inc. v. City of*

*Anacortes*, 572 F.3d 987, 995 (9th Cir. 2009); *New Cingular Wireless PCS, LLC v. County of Ventura*, No. 2:21-cv-03079-SVW-JPR (C.D. Cal. Feb. 22, 2022).

## FACTUAL BACKGROUND

13.    AT&T provides wireless services to its customers throughout the area relevant to this Complaint pursuant to spectrum frequency licenses issued by the FCC. To provide reliable, high-quality wireless services, AT&T continually assesses the state of its wireless network to identify and address network needs before they adversely affect service to AT&T customers.

14.    AT&T's radio frequency engineers have identified deficiencies in its wireless services in parts of the County. The deficiencies are caused by a dramatic increase in mobile data on the network, which constrains network capacity and can degrade service quality for AT&T's wireless customers. If not quickly rectified, these deficiencies will result in unreliable signals, and customers will have problems accessing AT&T's wireless network, particularly during busy usage periods.

15.    AT&T needs to provide and improve important wireless services in the subject area of the County, including new 5G services, as well as FirstNet services. FirstNet is the federal First Responder Network Authority, a nationwide dedicated wireless communications network for first responders.

16.    AT&T needs to eliminate the identified service deficiencies, and improve reliability of, and access to, its personal wireless services in the County. AT&T's radio frequency engineers have determined that the Proposed Facility is required to remedy these deficiencies, to close an existing significant service coverage gap, and provide adequate service to its customers. Every day that AT&T is prevented from installing the Proposed Facility, it is materially inhibited from improving its wireless services.

17.     AT&T carefully investigated locations to place the Proposed Facility, taking into consideration the County's applicable regulations and AT&T's network service needs, including its need to close the significant service coverage gap in the subject portion of the County.

18.     On February 18, 2021, AT&T submitted an application to the County for approval of its Proposed Facility, a 150-foot tower with associated communications equipment, to be placed within a 40' x 40' fenced leased area on an approximately 5-acre parcel.

19.     On August 3, 2022, after public hearing, an open record period, and a comment and response period, the County Hearings Official denied AT&T's application for approval of the Proposed Facility. The Hearings Official applied Lane Code § 16.264(e)(4), which requires a telecommunications tower to be located at least 1,200 feet from any dwelling unless "the homeowner(s) who is being encroached upon submits written approval of the encroachment." The Hearings Official found that the Proposed Facility would be within 1,200 feet of at least 11 dwellings, and not all those property owners consented. The Hearings Official further rejected AT&T's argument that enforcement of the 1,200-foot setback constituted an unlawful effective prohibition of service under federal law.

20.     On August 16, 2022, AT&T sought reconsideration of the Hearings Official's decision. On September 22, 2022, the Hearings Official affirmed the prior decision.

21.     The Hearings Official did *not* find that AT&T's Proposed Facility was unnecessary to improve AT&T's wireless services.

22.     The Hearings Official did *not* find that AT&T had failed to show it needed to improve its wireless coverage in the area surrounding the Proposed Facility.

23.    The Hearing Official did *not* find that an alternative location that was permissible under the County's ordinances could otherwise satisfy AT&T's demonstrated coverage needs.

24.    To the extent alternative sites were available to AT&T, those sites too would be impermissible under the County's ordinance, because they violate the County's 1,200-foot setback requirement.

25.    As set forth below, the County's actions and inactions violate federal law.

## FIRST CLAIM FOR RELIEF

### (Effective Prohibition)

### (47 U.S.C. §§ 253(a), 47 U.S.C. § 332(c)(7)(B)(i)(II))

26.    AT&T hereby incorporates by reference the allegations of paragraphs 1 through 25, inclusive, as though fully set forth herein.

27.    Section 332 of the Act mandates that local regulation of the placement of wireless facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). Similarly, under Section 253(a) of the Act, local government regulation may not "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).

28.    The County has effectively prohibited AT&T's provision of personal wireless services.

29.    An effective prohibition, in violation of the Act, occurs when a local requirement "'materially limits' or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment" (*Infrastructure Order*, ¶ 35), such as "where a [local regulation] materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service" (*id*. at ¶ 37). The material inhibition

analysis "focuses on the service the provider wishes to provide, . . . including facilities deployment to provide existing services more robustly, or at a better level of quality." *Id.*, n.95. A local government "could materially inhibit service in numerous ways – not only by rendering a service provider unable to provide existing service in a new geographic area or by restricting the entry of a new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Id.* ¶ 37.

30.    The County, by virtue of its 1,200-foot setback requirement and by failing to approve AT&T's application for the Proposed Facility, has materially inhibited AT&T's effort to upgrade its wireless network, to improve existing services and to provide new services. The County has thus effectively prohibited AT&T from providing personal wireless services in the County.

31.    The County has also effectively prohibited AT&T's provision of personal wireless services, in that the its failure to approve AT&T's permit application has prevented AT&T from remedying a significant service coverage gap using the least intrusive means.

WHEREFORE, AT&T prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, AT&T prays for relief against the County as follows:

1.    For a declaration and judgment that the County has violated the Act by denying AT&T's application to construct the Proposed Facility;

2.    For a declaration and judgment that the County has violated the Act by effectively prohibiting AT&T from improving and providing personal wireless service and telecommunications service;

3.    For an order mandating that the County grant forthwith AT&T's application for the Proposed Facility and immediately issue all

permits and all other authorizations necessary for the construction of that Facility;

4.    For an award of AT&T's costs of suit herein; and

5.    For such other and further relief as the Court may deem just and proper.

## REQUEST FOR EXPEDITED REVIEW

Section 332 of the Act provides AT&T a private right of action for the County's denial of AT&T's wireless facility permit application, and states that "[t]he court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v). AT&T respectfully requests a hearing and decision by the Court on an expedited basis as provided by the Act.

Dated:  October 25, 2022          MAYER BROWN LLP

By:    */s/ Robert C. Double III*
Robert C. Double III, OSB No. 200683
*rdouble@mayerbrown.com*
Telephone: (213) 229-9500
Facsimile: (213) 625-0248

Hans J. Germann
(Pro Hac Vice To Be Filed)
*hgermann@mayerbrown.com*
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8792
Facsimile: (312) 706-8169

Raymond P. Bolaños
(Pro Hac Vice To Be Filed)
*rb2659@att.com*
AT&T Services, Inc. Legal Dept.
430 Bush Street, 6th Floor
San Francisco, CA 94108

Telephone: (415) 268-9491
Facsimile: (415) 543-0418

Attorneys for Plaintiff
New Cingular Wireless PCS, LLC d/b/a
AT&T Mobility